IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JOE HAND PROMOTIONS INC.,

                Plaintiff,

v.                                         CIVIL ACTION NO.   2:14-cv-28688

JAMES HARRISON, et al.,

                Defendant.

MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Joe Hand Promotions, Inc.'s Motion for Default Judgment (ECF No. 13.)   For the reasons that follow, the motion is **GRANTED**.   Damages are awarded in amounts set forth below.

I.       *BACKGROUND*

Plaintiff Joe Hand Promotions, Inc. ("Joe Hand") is a nationwide distributor of closed-circuit and pay-per-view sports and entertainment programming to commercial establishments. Joe Hand enters into sublicensing agreements with these establishments to permit the public broadcast of its programming.   By contract, Joe Hand purchased rights to distribute the Ultimate Fighting Championship 170: Rousey v. McMann broadcast scheduled for February 22, 2014, (the "Broadcast"), via closed circuit television and encrypted satellite signal.   (Compl. ¶ 14, ECF No. 1 at 3.)   Joe Hand entered into agreements with several West Virginia commercial establishments, allowing them to distribute the Broadcast for viewing by their patrons.   (*Id.* ¶ 15.)

On November 19, 2014, Joe Hand filed this lawsuit alleging that Defendants Club Infinity and James Harrison, its principal, owner, or director, unlawfully intercepted and exhibited the Broadcast for the purpose of direct or indirect commercial advantage or private financial gain. The two-count Complaint alleges violations of Sections 553 and 605 of Title 47, United States Code.   Defendants, despite being properly served, have failed to answer or otherwise respond to the Complaint.   The Court entered default on January 11, 2016 and now enters default judgment.

## II.     LEGAL STANDARD

Default judgment is available "when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F.Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).   Under Federal Rule of Civil Procedure 55, which governs default judgments, "trial judges are vested with discretion, which must be liberally exercised, in entering . . . [default] judgments and in providing relief therefrom." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982).   The defendant's failure to respond constitutes an admission of the well-pleaded factual allegations in the complaint, except as related to damages.   *Ryan v. Homecomings Fin. Network,* 253 F.3d 778, 780 (4th Cir. 2001).   The court must make an independent determination of damages where the amount of the plaintiff's claim is uncertain.   Fed. R. Civ. P. 55(b).   Reliance on affidavits, without an in-person hearing, is appropriate as long as the record supports the damages requested.   *Id.*   The Court notes that no hearing is necessary in this case.

## III.     DISCUSSION

Joe Hand has alleged violations of Sections 553 and 605.   However, an injured plaintiff cannot recover damages under both Section 553 and Section 605, *see Joe Hand Promotions, Inc.*

2

*v. Coaches Sports Bar*, 812 F. Supp. 2d 702, 704 (E.D.N.C. Sept. 19, 2011) (citation omitted), and

here Joe Hand elects to pursue damages only under Section 605.   The Court proceeds to consider

whether Joe Hand has pleaded facts giving rise to liability under Section 605 before resolving the

question of damages.

Section 605 provides that "[n]o person not being authorized by the sender shall intercept

any radio communication and divulge or publish the existence, contents, substance, purport, effect,

or meaning of such intercepted communication to any person . . . . " 47 U.S.C. § 605(a).   The

statute continues: "Any person aggrieved by any violation of subsection (a) of this section or

paragraph (4) of this subsection may bring a civil action in a United States district court."   §

605(e)(3).    The "intercepted communications" referenced in the statute include satellite

transmissions.  *See* § 605(d)(6) (defining "any person aggrieved" as a person who maintains

"proprietary rights in the intercepted communication by wire or radio, including wholesale or retail

distributors of satellite cable programming"); *see also Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*,

253 F.3d 900, 914 (6th Cir. 2001) (concluding after discussion of the relevant legislative history

that "Congress intended to bring cable and satellite communications under the protection of [the

Communications] Act").

Joe Hand has alleged facts that, when accepted as true, support liability under Section 605.

Joe Hand alleges that it was granted the right to display the Broadcast via encrypted satellite signal

on February 22, 2014, and that Defendants knowingly and intentionally intercepted its satellite

transmission and displayed the program for its patrons to view.  (Compl. ¶ 14–18.)   Joe Hand

provides the affidavit of its auditor, Stoney Lee Shifflett, who was present at Club Infinity on

February 22, 2014 and testifies that he observed Club Infinity airing the Broadcast on three

television screens.  (Shifflett Aff. at 1, ECF No. 14-2.)  Joe Hand adds that there are several illegal methods of accessing the Broadcast, and without discovery, it is impossible to determine which particular method Defendants employed.  Nevertheless, Joe Hand avers that its programming cannot be mistakenly, innocently, or accidentally intercepted.  (Aff. of Joe Hand Jr., President, at ¶ 9, ECF No. 14-3.)  Joe Hand believes that Defendants most likely "used an illegal satellite receiver, misrepresented [their] business establishment as a residence, or removed an authorized residential receiver from one location to a different commercial location" to intercept the Broadcast.   (Compl. ¶ 18.)

These allegations establish liability against Defendant Club Infinity as well as Defendant James Harrison individually, who "was the individual with supervisory capacity and control over the activities occurring within the establishment on February 22, 2014" and received a financial benefit therefrom.    (*Id.*  ¶¶  8–9); *see Joe Hand Promotions, Inc. v. Phillips*, No. 06 Civ. 3624(BSJ)(JCF), 2007 WL 2030285, at *3 (S.D.N.Y. July 16, 2007) (finding vicarious liability applies where the defendant "had a 'right and ability to supervise' the violations, and that he had a strong financial interest in such activities" (citation omitted)).   Accordingly, Mr. Harrison may be held jointly and severally liable along with Club Infinity for the violation of Section 605.

An aggrieved plaintiff may recover between $1,000 and $10,000 in actual or statutory damages for each violation of Section 605(a).  § 605(e)(3)(C)(i)(ii). The statute also provides enhanced damages of up to $100,000 per violation for those who violate its provisions "willfully" with the purpose of obtaining a commercial advantage or private financial gain.   § 605(e)(3)(C)(ii).   Joe Hand requests $10,000 in statutory damages and $50,000 in enhanced damages.

A full estimation of actual damages would be speculative in this case, though Joe Hand has provided some evidence to guide the Court's consideration of its losses.   Mr. Schifflett attests that seven patrons were present at Club Infinity during the airing of the Broadcast.   (Shifflett Aff. at 2.)   He estimates the occupancy limit of Club Infinity is 175 persons.   (*Id.*)   Joe Hand calculates rates for its sublicensing contracts based on maximum occupancy, as noted by the "rate card" attached to Joe Hand's motion.   For this size of establishment, Joe Hand would charge $1300 for the right to display the Broadcast.   (Rate Card, ECF No. 14-4.)   Joe Hand also submits a print-out of Club Infinity's Facebook page that ostensibly shows Club Infinity advertising the broadcast of two earlier Ultimate Fighting Championship events.   (ECF No. 14-1.)   The broadcasting rights to the advertised events were exclusively Joe Hand's, but, in what appears to be its common practice, Club Infinity had not paid the requisite sublicense fees.

District courts within the Fourth Circuit employ one of three methods in determining damages under Section 605, with the second and third approaches being the most common.   The first approach is to use a flat amount equal to the sublicense fee that was not paid.   *J & J Sports Prods., Inc. v. Lara Sport House Corp.*, No. l:10–cv–01369, 2011 WL 4345114, at *6 (E.D. Va. Aug. 26, 2011) (awarding $2,200, which was the licensing fee based on establishment's capacity).   The second is to use a per-patron rate.   *Joe Hand Promotions, Inc. v. Lawhon*, No. 1:14cv459, 2016 WL 160730, at *2 (M.D.N.C. Jan. 13, 2016) (applying rate of $100 for twelve patrons, for a total of $1200); *Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc.*, 920 F. Supp. 2d 659, 667 (E.D. Va. 2013) (finding sublicense fee alone insufficient to deter future violations and applying a per-patron rate of $100 per patron); *Joe Hand Promotions, Inc. v. Citibars, Inc.*, No. 2:11cv58, 2012 WL 503212, at *5 (E.D. Va. Feb. 8, 2012) (applying $100 per-patron fee).   Third,

5

some courts award a flat sum per violation.   *Coaches Sports Bar*, 812 F. Supp. 2d at 704 ($2,000);

*J & J Sports Productions, Inc. v. J.R. 'Z Neighborhood Sports Grille*, No. 2:09–03141–DCN–RSC,

2010 WL 1838432, at *1 (D.S.C. Apr. 5, 2010) ($5,000); *Joe Hand Promotions, Inc. v. Angry*

*Ales, Inc.*, No. 3:06cv73, 2007 WL 3226451, at *5 (W.D.N.C. Oct. 29, 2007) ($1,000); *Kingvision*

*Pay–Per–View, Ltd. v. Gadson*, No. 1:04–678, 2007 WL 2746780, at *2 (M.D.N.C. Sept. 18, 2007)

($10,000); *Kingvision Pay-Per-View, Ltd. v. Las Reynas Rest.*, No. 4:07-cv-67-D, 2007 WL

2700008, at *3 (E.D.N.C. Sept. 11, 2007) ($2,000).

　　　　In this case, awarding a per-patron rate of $100 for each of the seven patrons present during

the Broadcast is insufficient, as Joe Hand's provable losses are at least $1300, the amount of the

sublicense fee.   Similarly, the Court finds that a statutory damages award limited to the equivalent

of the sublicense fee would have little deterrent effect on future piracy.   The Court finds statutory

damages in the amount of $5000 is just compensation for Defendants' violation of Section 605.

This amount takes into account what appear to be repeated violations of the statute on the part of

Defendants, as indicated by Club Infinity's Facebook advertisements.   However, given that Club

Infinity does not appear to have acquired substantial monetary gain through its illegal activity, the

Court finds that awarding the statutory maximum of damages is excessive and would create an

unjustified disparity with similar cases.

　　　　Next, upon finding that Defendants' violation was willful and for "purposes of direct or

indirect commercial advantage or private financial gain," the Court may award enhanced penalties

up to $100,000.   § 605(e)(3)(C)(ii).   There is no question that Defendants intercepted and aired

the Broadcast willfully, and for direct or indirect commercial advantage or private financial gain.

Joe Hand alleges that the satellite signal was encrypted in such a way that it could not have been

6

intercepted by accident.   Furthermore, the historical advertisements on Club Infinity's Facebook page strongly suggest that the establishment intercepted Ultimate Fighting Championship events in an attempt to increase patronage.

Enhanced penalties often bear a relation to the amount of the statutory award.  *See, e.g., Lawhon*, 2016 WL 160730, at \*2 (awarding enhanced damages equal to three times the statutory damages); *Joe Hand Promotions, Inc. v. Upstate Recreation*, No. 6:13-2467-TMC, 2015 WL 685461, at \*9 (D.S.C. Feb. 18, 2015) (awarding two-and-one-half times the statutory award in enhanced damages); *J & J Sports Prods., Inc. v. Romenski*, 845 F. Supp. 2d 703, 708 (W.D.N.C. 2012) (awarding total damages equal to treble the sublicense fee). When determining additional damages, other courts have considered factors such as: "(1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) significant actual damages to plaintiff; (4) defendant's advertising for the intended broadcast of the event; and (5) defendant's charging a cover charge or charging premiums for food and drinks."  *Wing Spot*, 920 F. Supp. 2d at 668 (quoting *Kingvision Pay-Per-View Ltd. v. Rodriguez*, No. 02 CIV. 7972 (SHS), 2003 WL 548891, at \*1 (S.D.N.Y. Feb. 24, 2003)).

Joe Hand points out by affidavit that these factors are somewhat limited in their utility. (*See* Aff. of Joe Hand Jr., President, at ¶ 14.)   While that may be true, the Court has no evidence that the circumstances of this case deviate from the norm, save perhaps for evidence suggesting that Club Infinity had some history of intercepting Joe Hand's satellite broadcasts in a similarly illegal manner.   Joe Hand points to no other aggravating factor that would warrant an exceptional enhanced damages award.   And if the Court focuses its attention on the five factors delineated above, only the first, as mentioned earlier, is particularly noteworthy.   The other factors are

neutral or even weigh against an increased award of enhanced damages.   With regard to the fifth

factor, for example, Mr. Shifflett attests that he was not charged a cover fee at Club Infinity on the

night of the Broadcast.   (Shifflett Aff. at 1.)   The Court also notes that any attempt on the part of

Club Infinity to attract patrons by displaying the Broadcast appears to have been unsuccessful.

Apart from Club Infinity's staff, Mr. Shifflett observed only seven patrons present that night.

Thus, although enhanced damages are appropriate whether Defendants' conduct resulted in great

financial gain or not, the Court finds that $50,000 is excessive.   Consistent with the deterrence

goals of § 605, and as a means of penalizing Club Infinity's repeated violations, the Court awards

enhanced damages equal to two times the statutory damages, or $10,000.   This results in total

damages of $15,000 against Defendants.

Joe Hand also tenders an affidavit from its legal counsel detailing the time expended on

this case (5.5 hours) and the hourly rate charged ($250 per hour).   Under Section 605, Joe Hand

is entitled to recover these reasonable attorney's fees, in addition to the Court's $400 filing fee.   §

605(e)(3)(B)(iii).

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion for Default Judgment.   (ECF

No. 13.)   Joe Hand is awarded judgment against both Defendants, jointly and severally, in the

amount of $15,000 in statutory and enhanced damages plus $1775 in attorney's fees and costs, for

a total judgment of $16,775.   The Court hereby **DISMISSES** this case and **DIRECTS** that it be

removed from the Court's active docket.   A separate Judgment Order will issue memorializing

the Court's findings.

8

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any

unrepresented party.

ENTER:        November 28, 2016

_____

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE